**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
EASTERN DIVISION**

**EZELL ROBINSON**                                                                     **PLAINTIFF**

**V.**                      **CASE NO.: 2:10CV00184 BD**

**MICHAEL J. ASTRUE, Commissioner,
Social Security Administration**                                        **DEFENDANT**

**MEMORANDUM OPINION AND ORDER**

Plaintiff Ezell Robinson appeals the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying his claim for Disability Insurance benefits ("DIB") under Title II of the Social Security Act (the "Act") and Supplemental Security income ("SSI") under Title XVI of the Act. For the following reasons, the decision of the Commissioner is AFFIRMED.

**I.**      **Background:**

On July 23, 2008, Mr. Robinson filed for DIB and SSI, claiming disability since May 1, 2007, due to diabetes, kidney problems, prostate problems, high blood pressure, high cholesterol, and foot problems. (Tr. 107, 147) After denials initially and upon reconsideration, Mr. Robinson requested a hearing before an Administrative Law Judge ("ALJ").[1] The ALJ held a hearing on July 12, 2010, at which Mr. Robinson appeared with his attorney and testified. (Tr. 22-31) The ALJ also heard testimony from a vocational expert ("VE"). (Tr. 25, 30)

---

[1] The Honorable W. Thomas Bundy.

The ALJ issued a decision on August 17, 2010, finding that Mr. Robinson was not disabled for purposes of the Act. (Tr. 8-15) On November 5, 2010, the Appeals Council denied his request for review, making the ALJ's decision the Commissioner's final decision. (Tr. 1-3)

Mr. Robinson was fifty-six years old at the time of the hearing. (Tr. 8) He had a twelfth-grade education (Tr. 151) and had worked as a gas station attendant and factory laborer. (Tr. 153) At the time of the hearing, he lived with his wife, stepson, and stepdaughter. (Tr. 27)

II.     **Decision of the Administrative Law Judge:**

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work[2]; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g); 416.920(a)-(g).

---

[2] If the claimant has sufficient residual functional capacity to perform past relevant work, the inquiry ends and benefits are denied. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

The ALJ found that Mr. Robinson had not engaged in substantial gainful activity since his alleged onset date. (Tr. 10) He found that Mr. Robinson had the following severe impairments: diabetes mellitus with mild neuropathy, hypertension, and obesity. (Tr. 10) The ALJ found Mr. Robinson did not have an impairment or combination of impairments that met or equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1526, 416.926). (Tr. 10-11)

The ALJ determined Mr. Robinson had the residual functional capacity ("RFC") to perform medium work.[3] (Tr. 11-14) The VE testified that Mr. Robinson performed his past relevant work as a gas station attendant at the medium exertional level. (Tr. 25) At step four, then, the ALJ found that Mr. Robinson could perform his past relevant work as a gas station attendant. (Tr. 14) Based on this finding, the ALJ concluded Mr. Robinson was not disabled within the meaning of the Act. (Tr. 14-15)

## III. Analysis:

Mr. Robinson claims the findings of the ALJ are not supported by substantial evidence because the ALJ overestimated Mr. Robinson's RFC. (#11 at p. 12-14) The Commissioner argues in response that substantial evidence supports the ALJ's RFC determination. (#12, p. 4-10)

---

[3] Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

A.   *Standard of Review*

In reviewing the Commissioner's decision, this Court must determine whether there is substantial evidence in the record as a whole to support the decision. *Johnson v. Astrue*, 627 F.3d 316, 319 (8th Cir. 2010); 42 U.S.C. § 405(g). Substantial evidence is "less than a preponderance, but sufficient for reasonable minds to find it adequate to support the decision." *Id*. (citing *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010)).

In reviewing the record as a whole, the Court must consider both evidence that detracts from the Commissioner's decision and evidence that supports the decision; but, the decision cannot be reversed, "simply because some evidence may support the opposite conclusion." *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)(quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

B.   *Residual Functional Capacity*

The ALJ bears "the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010)(citations omitted). A claimant's residual functional capacity is a medical question, and at least some medical evidence must support the ALJ's residual functional capacity determination. *Id*.

Mr. Robinson claims the ALJ erred by concluding he retained the RFC for medium work. As support for this claim, he argues the ALJ erred by discounting the opinions of two of his physicians and by failing to properly consider his obesity. (#11 at p. 13)

Mr. Robinson alleged he became disabled on May 1, 2007. The medical records show he saw Glen L. Loveday, M.D., on June 11, 2007, and complained that he had been feeling bad for about a month. (Tr. 240-241) Dr. Loveday noted a history of diabetes, hypertension, tobacco abuse, obesity, and hyperlipidemia. (Tr. 240) At that time, Mr. Robinson had not taken his medications for over a year. He said that he stopped taking his medication due to the cost, but as Dr. Loveday noted, Mr. Robinson continued to buy smoking materials during this same period. (Tr. 240) At this visit, Dr. Loveday noted that Mr. Robinson's pedal skin and sensation were intact. (Tr. 240) Dr. Loveday recommended smoking cessation, aerobic exercise, and daily foot care. (Tr. 241)

Mr. Robinson continued to see Dr. Loveday during the time leading up to the administrative hearing on July 12, 2010. At several visits, Dr. Loveday noted decreased pedal sensation. (Tr. 231, 233, 235, 260) On other visits, including Mr. Robinson's final visit before the administrative hearing, his pedal sensation was "slightly" decreased or fully intact. (Tr. 229, 238, 240, 258, 295, 366) At each visit, without exception, Dr. Loveday recommended aerobic exercise and smoking cessation. (Tr. 230, 232, 234, 236, 259, 261, 296, 367)

On July 10, 2007, Dr. Loveday stressed compliance with his smoking cessation recommendation. (Tr. 238) On December 20, 2007, Dr. Loveday discussed in detail with Mr. Robinson the effect of tobacco on his symptoms of neuropathy. (Tr. 233) Despite knowing the ill effects of smoking on his neuropathy symptoms, and the despite the

5

repeated warnings and recommendations from his treating physician, Mr. Robinson continued to smoke at substantially the same rate.[4] Mr. Robinson's symptoms of neuropathy were the primary symptoms contributing to his alleged disability.

Mr. Robinson testified that the symptoms responsible for his alleged disability were foot pain and shortness of breath. (Tr. 26) Nothing else contributed to his alleged disability, except fatigue. (Tr. 29-30) Mr. Robinson had adult onset diabetes with neuropathy. Although he took medication, he never required insulin to treat his diabetes. (Tr. 26)

Mr. Robinson points to reports from F. Rana, M.D., and Jose B. Delfin, M.D., in support of his argument that he could not perform medium work. (#11, p. 12-13) Shortly after seeing Dr. Loveday, Mr. Robinson saw Dr. Rana for a disability evaluation for the Illinois Department of Public Aid. (Tr. 225-228) It does not appear Dr. Rana had a treatment relationship with Mr. Robinson. Besides noting a history of diabetes and hypertension, the evaluation was normal. Dr. Rana reported an otherwise normal cardiovascular system. (Tr. 225) There was no pain, swelling, tenderness, or stiffness in Mr. Robinson's musculoskeletal system. (Tr. 226) Mr. Robinson had no deficits in his range of motion. (Tr. 226) His nerves and sensory were intact, with full motor strength

---

[4] At the hearing, Mr. Robinson claimed to have "slowed down" his smoking rate. (Tr. 26) Medical records documenting his habit, however, do not support this assertion. Mr. Robinson went from three-fourths of a package per day at his first visit with Dr. Loveday, to just over one-half to a full package per day at his last visit. (Tr. 240, 366)

in all major muscle groups.  (Tr. 227)  Despite reporting no physical deficiencies, Dr. Rana found some limitations in Mr. Robinson's physical abilities, including a limitation in lifting up to twenty pounds.  (Tr. 228)

Dr. Delfin, who had a brief treatment relationship with Mr. Robinson, completed a "Diabetes Mellitus Residual Functional Capacity Questionnaire" on July 13, 2009.  (Tr. 278-280)  The questionnaire listed extremity pain and numbness as Mr. Robinson's only symptoms.  (Tr. 278)  Dr. Delfin opined that Mr. Robinson could stand for one hour before needing to sit down or walk around.  (Tr. 279)  He could sit for more that two hours at a time.  Mr. Robinson could sit for about 4 hours in an eight-hour workday and stand or walk for about 4 hours in an eight-hour workday.  (Tr. 279)  Dr. Delfin did not complete the final page of the questionnaire.  (Tr. 280)

After reviewing the evidence, the ALJ gave the opinions of Dr. Rana and Dr. Delfin little weight.  (Tr. 13-14)   This decision is supported by the record.  An ALJ may reject the opinion of any medical expert if that opinion is inconsistent with the medical record as a whole.  *Finch v. Astrue*, 547 F.3d 933, 938 (8th Cir. 2008)(quoting *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002)).  It is the ALJ's function to resolve conflicts among the various treating and examining physicians.  *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007)(quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)).  Additionally, a treating physician's opinion that a claimant is disabled or cannot be gainfully employed is entitled to no deference because it invades the province of the

Commissioner, whose job it is to make the ultimate disability determination. *House v. Astrue*, 500 F.3d 741, 745 (8th Cir. 2007).

Both Dr. Rana and Dr. Delfin filled in checklists, but failed to provide the basis for their findings. Mr. Robinson saw Dr. Rana once. At this visit, Dr. Rana noted a normal condition. (Tr. 225-228) He noted a tingling sensation in Mr. Robinson's feet, but did not diagnose Mr. Robinson with neuropathy. (Tr. 225, 227) Dr. Rana also failed to note any sensory deficiency. (Tr. 227) Dr. Rana provided no support for the limitations he found.

Similarly, Dr. Delfin's limitations are not supported by the medical record or his own findings. He found that Mr. Robinson could work a full eight-hour workday, with only normal breaks, with four hours sitting and four hours standing or walking. (Tr. 279) Dr. Delfin then found that Mr. Robinson would require an unscheduled thirty minute to one hour break every two to three hours. (Tr. 279) So Dr. Delfin found that Mr. Robinson could work eight total hours in an eight-hour workday with only normal breaks, but also found that Mr. Robinson would need over an hour to four hours in unscheduled breaks in an eight-hour workday. (Tr. 279)

As the ALJ discussed, the longitudinal medical record reflects mild neuropathy, possibly aggravated by continued smoking, and consistent recommendations for aerobic exercise. Considering the record as a whole, the ALJ properly discounted the opinions in the checklists provided by Dr. Rana and Dr. Delfin. See *Cantrell v. Apfel*, 231 F.3d 1104,

1107 (8th Cir. 2000)(discounting treating physician's two pages of checked boxes devoid of illuminating examples, descriptions, or conclusions); *Martise v. Astrue*, 641 F.3d at 909, 926 (8th Cir. 2011)(treating physician's opinion is properly discounted when it is inconsistent with his treatment notes or with medical evidence as whole).

The ALJ also considered Mr. Robinson's obesity. (Tr. 13-14) During the relevant period, Mr. Robinson's body mass index ("BMI") fluctuated from 26.97 (overweight), to 23.10 (normal weight), to 30.13 (obese). Obesity is defined as a BMI of 30 or greater, placing Mr. Robinson's maximum BMI of 30.13 at the low end of obesity. At Mr. Robinson's last doctor visit before the administrative hearing, his BMI was 29.41 (overweight). (Tr. 366) This corresponds to a height of 5'10" and a weight of 205 pounds. (Tr. 366)

The ALJ found that Mr. Robinson's weight had not restricted him from performing a wide range of activities of daily living. (Tr. 14) His finding that obesity-related limitations would not preclude an RFC for medium work is supported by the record. See *Johnson v. Apfel*, 240 F.3d 1145, 1148-49 (8th Cir. 2001)(an ALJ may consider activities of daily living when assessing a claimant's residual functional capacity).

In determining Mr. Robinson's RFC, the ALJ discussed the longitudinal medical record, which showed only mild diabetic neuropathy and slightly elevated blood pressure, Mr. Robinson's wide range of daily activities, and Mr. Robinson's description of his limitations. The ALJ also considered the opinions of the state agency physicians, as

described in a physical RFC assessment. (Tr. 248-255). State agency physicians' opinions are expert opinions, and an ALJ must consider these opinions, along with the other evidence of record. 20 C.F.R. § 416.927(f); SSR 96-6p. The record as a whole provides substantial evidence supporting the ALJ's decision.

## IV.    Conclusion:

The ALJ did not err when assessing Mr. Robinson's obesity or the opinions provided in Dr. Rana and Dr. Delfin's checklists. There is sufficient evidence in the record as a whole to support the Commissioner's determination that Ezell Robinson was not disabled within the meaning of the Act.

Accordingly, the decision of the Commissioner is AFFIRMED. The Clerk is directed to close the case, this 3rd day of October, 2011.

_____
UNITED STATES MAGISTRATE JUDGE